Hill v. Textron                          CV-00-221-M    03/17/01
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


James Hill, Jr.,
      Plaintiff

      v.                                  Civil No. 00-221-M
                                          Opinion No. 2001 DNH 051
Textron Automotive
Interiors, Inc.,
      Defendant


                          **O R D E R**


      James Hill, Jr. brings this action against his former

employer, Textron Automotive Interiors, seeking damages for

alleged acts of racial harassment and discrimination.  See 42

U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, et seq.  Textron moves to dismiss both of Hill's

claims, asserting that they are time barred.  See Fed. R. Civ. P.

12(b)(6).  Hill objects.


                       **Standard of Review**

      A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of

limited inquiry, focusing not on "whether a plaintiff will

ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims."  Scheuer v. Rhodes, 416 U.S.

232, 236 (1974). In considering a motion to dismiss, "the material facts alleged in the complaint are to be construed in the light most favorable to the plaintiff and taken as admitted." Chasan v. Village District of Eastman, 572 F.Supp. 578, 579 (D.N.H. 1983). See also The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 15 (1st Cir. 1989). "[D]ismissal is appropriate only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Roeder v. Alpha Industries, Inc., 814 F.2d 22, 25 (1st Cir. 1987)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

### Background

Accepting the allegations set forth in the complaint as true (as the court must do at this stage of the litigation), the material facts appears as follows. Hill alleges that he "is partly Portuguese and his skin is darker than a Caucasian's." Complaint, at para. 10. Accordingly, he says he "is a person of color." Id., at para. 2.

2

In November of 1989, Textron hired Hill as a machine operator. Hills says that during his tenure with Textron he was subjected to racial harassment that was both severe and pervasive. He also claims to have been the victim of racial discrimination. In October of 1996, Hill was laid off. He says that although Textron normally followed a strict policy of laying off workers in order of their seniority, he was terminated while an employee of lesser seniority was retained. He claims Textron's decision to terminate him was motivated by unlawful racial discrimination.

Approximately five months after his termination, Hill filed a charge of discrimination with the New Hampshire Human Rights Commission (the "HRC"). Complaint, at para. 7. In December of 1998, the HRC issued a finding of "no probable cause." In January of 1999, counsel for Hill requested the Equal Employment Opportunity Commission ("EEOC") to reconsider the matter and issue a "right to sue" letter. Approximately three months later, on March 23, 1999, the EEOC mailed a "Dismissal and Notice of Rights" letter to both Hill and Textron. Hill's copy was addressed to the post office box he had provided as his mailing

address.  In that notice, the EEOC told Hill that it had adopted the findings of the HRC, informed him of his right to sue Textron, and specifically notified him that "your lawsuit must be filed within 90 days of your receipt of this Notice; otherwise your right to sue based on this charge will be lost."  Exhibit B to defendant's memorandum.  The copy sent to Textron arrived in due course.  Hill, however, asserts in a rather conclusory fashion that he never received his copy.  Nevertheless, the letter addressed to Hill was not returned as undelivered or undeliverable.

In January of 2000, more than a year after Hill asked the EEOC to reconsider the matter and issue a right to sue letter, counsel for Hill contacted the EEOC and left a message inquiring into the status of Hill's case.  She received no response and, with newly found urgency, faxed a letter of inquiry to the EEOC.  On February 4, 2000, the EEOC faxed her a copy of the right to sue letter it mailed nearly a year earlier, dated March 23, 1999.  Hill and his counsel say that was the first time they learned that the EEOC had issued a right to sue letter.  And, because he commenced this litigation within 90 days of his counsel's having

4

received a copy of the right to sue letter on February 4, 2000, Hill asserts that his complaint should be deemed timely. Not surprisingly, Textron points out that Hill filed this action more than one year after the EEOC mailed the right to sue letter and, for that reason, says Hill's Title VII claim is barred by the 90 day filing requirement.

As for Hill's section 1981 claim, Textron asserts that it too is time barred. In support of that position, Textron says because section 1981 itself contains no statute of limitations, the court must borrow New Hampshire's three-year statute of limitations. Hill, on the other hand, urges the court to apply the four-year limitations period set forth in 28 U.S.C. § 1658 and rule that he filed his section 1981 claim against Textron in a timely manner.

Finally, Textron says Hill cannot maintain a cause of action under section 1981 because he "does not have a contractual relationship with his employer." Defendant's memorandum at 9. In response, Hill argues that employees at will, like employees under contract, may avail themselves of the protections afforded

5

by section 1981.  That issue is apparently unresolved in this circuit and, among those courts to have addressed it, there is a split of authority.

**Discussion**

I.   <u>Hill's Title VII Claim</u>.

Section 2000e-5 of Title 42 provides that an individual must file suit in federal court within 90 days after the EEOC provides him or her with a right to sue letter.  42 U.S.C. § 2000e-5(f)(1) (the EEOC "shall so notify the person aggrieved and within ninety days after the <u>giving</u> of such notice a civil action may be brought against the respondent named in the charge.") (emphasis supplied).  However, most courts have concluded that the 90-day period does not begin to run until the aggrieved individual actually <u>receives</u> notice in the form of a right to sue letter, and the EEOC, in turn, has adopted the general rule that the 90 day period begins to run upon the claimant's receipt of the right to sue letter.  <u>See</u> EEOC Compliance Manual, para. 255, § 4.5(a)(2) (2000), Exhibit D to defendant's memorandum ("the date the [right to sue letter] is received begins the Title VII/ADA/ADEA 90 day limitation.").

In considering the effect of a claimant's failure to file suit within the 90 days specified in section 2000e-5(f)(1), the Court of Appeals for the First Circuit has concluded that "section 2000e-5(f)(1) is nonjurisdictional." Rice v. New England College, 676 F.2d 9, 10 (1st Cir. 1982). The fact that the 90-day filing rule is non-jurisdictional is significant. First, because it is more akin to a statute of limitations than a jurisdictional prerequisite to suit, it is subject to waiver and equitable tolling. See generally Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982). Second, subject matter jurisdiction issues may be resolved by the court in fundamentally different ways than a limitations defense. Jurisdictional issues are typically raised in the context of a Rule 12(b)(1) motion to dismiss and, in deciding such a motion, the court "may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment." Lex Computer & Management Corp. v. Eslinger & Pelton, P.C., 676 F. Supp. 399, 402 (D.N.H. 1987); see also Richmond, F & P R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

7

On the other hand, when deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim (e.g., failure to comply with pertinent limitations period), the court must accept the truth of the allegations set forth in the complaint and is typically restricted to an examination of that pleading and any attachments to it. See Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) ("Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56.[1]

Turning to the substance of Hill's complaint, he does not seem to be arguing that the 90 day filing deadline should be equitably tolled. Instead, he claims that he did not receive the EEOC's right to sue letter until a copy was faxed to his attorney

---

[1] To be sure, the Watterson court went on to observe that, "courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id., at 4. In this case, however, many of the documents upon which the parties rely in support of their arguments (e.g., affidavits) fall outside the categories listed in Watterson. Thus, in ruling on Textron's motion to dismiss, the court must accept the allegations set forth in the complaint as true and cannot rely upon the additional materials submitted by the parties that raise or address disputed issues of fact.

on February 4, 2000. Thus, he says his civil suit - filed on May 5, 2000 - was actually filed within the prescribed 90 day period following his actual receipt of the right to sue notice. While Textron understandably doubts Hill's asserted failure to receive the initial right to sue letter in March of 1999, that factual matter is plainly disputed and, therefore, cannot be resolved on a Rule 12(b)(6) motion to dismiss. In other words, because the grounds for concluding that Hill's civil suit is untimely are not apparent from the complaint and, instead, come into focus only when one examines Textron's motion to dismiss and its accompanying affidavits, the court is precluded, given the current procedural posture, from granting Textron's motion to dismiss Hill's Title VII claim as barred by the 90 day filing requirement.

II. Hill's Section 1981 Claim.

As to Hill's section 1981 claim, Textron asserts that it must be dismissed for two reasons. First, Textron says the claim is barred by the applicable statute of limitations. Next, even assuming Hill's claim is not time-barred, Textron asserts that since he was an employee at will, Hill "did not have the

9

requisite contractual relationship with Textron to state a claim under section 1981." Defendant's memorandum at 9.


A. <u>Section 1981 and the Statute of Limitations</u>.

In count one of his complaint, Hill claims that Textron's decision to terminate his employment violated his rights under 42 U.S.C. § 1981. That statute provides, in relevant part, that:

> **(a) Statement of Equal Rights.** All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). In <u>Patterson v. McLean Credit Union</u>, 491 U.S. 164 (1989), the Supreme Court held that section 1981 "does not apply to conduct which occurs after the formation of a contract and which does not interfere with the right to enforce established contract obligations." <u>Id.</u>, at 171.


In 1991, responding at least in part to the <u>Patterson</u> decision, Congress enacted the Civil Rights Act of 1991 which, among other things, amended section 1981 by adding the following provision:

10

**(b) "Make and enforce contracts" defined.** For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, and conditions of the contractual relationship.

42 U.S.C. § 1981(b). Thus, the amendments enacted as part of the Civil Rights Act of 1991 provide that the statute's "prohibition against racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship, including discriminatory contract terminations." Rivers v. Roadway Express, Inc., 511 U.S. 298, 302 (1994). Consequently, while under prior Supreme Court precedent Hill would have no claim under section 1981 stemming from Textron's allegedly racially motivated decision to terminate his employment, the amendments to section 1981 enacted as part of the Civil Rights Act of 1991 provide him with such a cause of action. For reasons discussed below, it is important to note that Hill's section 1981 claim arises out of the 1991 amendments to the statute.

Section 1981 contains no statute of limitations. Historically, therefore, courts have borrowed the most closely

analogous state statute of limitations and applied it to claims arising under section 1981. See, e.g., Johnson v. Rodriguez, 943 F.2d 104 (1st Cir. 1991) (adopting Massachusetts' three-year personal injury statute of limitations for claims arising under section 1981). In 1990, however, Congress enacted a statute of limitations generally applicable to all civil actions arising under federal law, which provides:

> Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658. So, the critical issue presented by defendant's motion to dismiss is whether the four-year limitations period prescribed by 28 U.S.C. § 1658 applies to Hill's claim (since it is brought pursuant to the amendments to section 1981 that were enacted after the effective date of section 1658), or whether the court should continue to borrow New Hampshire's three year statute of limitations, notwithstanding the provisions of 28 U.S.C. § 1658 and the subsequent amendments to section 1981.

12

The Court of Appeals for the First Circuit has yet to address this issue. At least two district court opinions from this circuit stand for the proposition that, with regard to claims brought pursuant to section 1981, it remains appropriate to borrow the state's most closely analogous statute of limitations. See Joseph v. Wentworth Institute of Technology, 120 F. Supp. 2d 134 (D.Ma. 2000); Govan v. Trustees of Boston University, 66 F. Supp. 2d 74 (D.Ma. 1999). However, those decisions simply rely upon the circuit court's opinion in Johnson v. Rodriguez, supra, and do not consider the effect or applicability of 28 U.S.C. § 1658 (which was enacted after the relevant events giving rise to the Johnson case) to claims brought pursuant to the 1991 amendments to section 1981. Consequently, those opinions provide little guidance in this case.

To be sure, there is a split of authority on the issue. However, the court is persuaded that the better reasoned opinions are those that conclude the four-year limitations period set forth in 28 U.S.C. § 1658 applies to claims, such as Hill's, that arise under the amendments to 42 U.S.C. § 1981 enacted as part of

13

the Civil Rights Act of 1991.  The United States District Court

for the Western District of Tennessee recently described the

disagreement:

> A careful reading of the opinions in those cases
> reveals a split on the question of the applicability of
> § 1658 to claims brought under the Civil Rights Act of
> 1991. . . . Those courts holding that § 1658 had no
> effect essentially did so based on the principle of
> stare decisis.  Essentially, those courts found that
> there was a distinction between an act "enacted" after
> 1990 and an amendment to an existing act after 1990.
> Amendments to a pre-1990 act after 1990 did not come
> under the fall back statute of limitations contained in
> § 1658.  Those cases holding that § 1658 required the
> application of a four year statute of limitations did
> so based upon the theory that the relevant statutory
> amendment was not "merely technical in nature" and that
> it either created a new cause of action or restored a
> cause of action previously overlooked by courts.  In
> either event, the relevant amendment was an enactment
> for purposes of § 1658.

Miller v. Federal Express Corp., 56 F. Supp. 2d 955, 965

(W.D.Tenn. 1999) (citations omitted).  See also Nealey v.

University Health Services, Inc., 114 F. Supp. 2d 1358, 1365

(S.D. Ga. 2000) (collecting cases and concluding that the four-

year limitations period provided by 28 U.S.C. § 1658 applies to

claims brought under the Civil Rights Act of 1991 amendments to

section 1981); Miller v. Federal Express Corp., 56 F. Supp. 2d

955, 963-65 (W.D. Tenn. 1999) (discussing the legislative history

14

of 28 U.S.C. § 1658 and concluding that its four-year limitations period applies to claims brought under the amendments to section 1981 that were enacted as part of the Civil Rights Act of 1991). But see Zubi v. AT&T Corp., 219 F.3d 220, 226 (3rd Cir. 2000) ("Congress here chose to build upon a statutory text that has existed since 1870. Accordingly, we hold that [plaintiff's] civil action arises under an Act of Congress enacted before December 1, 1990, and is governed by [the State's] two year statute of limitations.").

This court is persuaded that, because Hill's section 1981 claim against Textron arises out of the amendments to that statute that were enacted as part of the Civil Rights Act of 1991, and because he filed his claim within four years, it is timely filed under 28 U.S.C. § 1658, the applicable federal limitations statute.

B.   Section 1981 and Employees at Will.

Next, Textron argues that, as an "employee at will," Hill cannot avail himself of the provisions of section 1981. In essence, it says that because Hill's employment was terminable at

15

will, he lacked any contractual relationship with Textron and, therefore, has no viable claim that his employment "contract" was terminated in a manner that violated any protections afforded by section 1981.

The court of appeals for this circuit has yet to address this issue.  However, the great weight of authority from other circuit courts of appeals supports the view that employees at will <u>can</u> avail themselves of the protections afforded by section 1981.  <u>See, e.g.</u>, <u>Lauture v. International Business Machines Corp.</u>, 216 F.3d 258 (2d Cir. 2000); <u>Perry v. Woodward</u>, 199 F.3d 1126 (10th Cir. 1999), <u>cert. denied</u>, 120 S.Ct. 1964 (2000); <u>Spriggs v. Diamond Auto Glass</u>, 165 F.3d 1015 (4th Cir. 1999); <u>Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.</u>, 160 F.3d 1048 (5th Cir. 1998).  And, at least one district court in this circuit shares the view that an employee at will may pursue claims against his or her former employer under section 1981.  <u>See</u> <u>Joseph v. Wentworth Institute of Technology</u>, 120 F. Supp. 2d at 144.  Moreover, the conclusion that employees at will have a sufficient "contractual" relationship with their employer to bring suit under section 1981 is entirely consistent with New

16

Hampshire's common law, which holds that "at will" employment relationship to be contractual in nature.  See generally Monge v. Beebe Rubber Co., 114 N.H. 130 (1974).

Textron's reliance upon Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025 (7th Cir. 1998), for the countervailing view is misplaced and unpersuasive.  In that case, the Seventh Circuit discussed, but did not resolve, the question of whether an employee at will can bring suit under section 1981. See id., at 1035 ("However, we need not determine whether [plaintiff's] at-will status provided adequate support for her section 1981 claim . . . .").

This court joins the majority of courts that have concluded that an employee at will is not precluded from bringing suit under 42 U.S.C. § 1981.  Accordingly, defendant's motion to dismiss count one of plaintiff's complaint is denied.

## Conclusion

Defendant's motion to dismiss (document no. 4) is denied. If, after engaging in pertinent discovery, Textron should elect

17

to revisit the question of whether Hill filed his Title VII claim in a timely fashion (e.g., in a motion for summary judgment), the parties' legal memoranda should, at a minimum, address the following issues:

1.  Who bears the burden of showing when Hill actually received the right to sue letter. <u>See, e.g.</u>, <u>Stambaugh v. Kansas Dept. of Corrections</u>, 844 F. Supp. 1431, 1433 (D. Kansas 1994) (holding that the burden rests with the plaintiff to prove that he filed suit within 90 days of receipt of a right to sue letter.); <u>See also Rice v. New England College</u>, 676 F.2d at 10 (suggesting that, absent evidence from plaintiff, court will presume that notice of right to sue was delivered in the ordinary course by the Postal Service).

2.  Whether this case presents a situation in which the presumption of receipt set forth in Rule 6(e) applies. <u>See generally</u> <u>Baldwin County Welcome Center v. Brown</u>, 466 U.S. 147, 148 n. 1 (1984); <u>Stambaugh</u>, 844 F. Supp. at 1432-33 (collecting cases).

3.  Whether plaintiff's claim that "mail was often not delivered to my residence" is relevant, since he provided the EEOC with a post office box address, rather than a street address, as his mailing address.

4.  The date on which plaintiff changed his mailing address and, if that change occurred <u>prior</u> to the EEOC's issuance of the right to sue letter, whether he notified the EEOC of his new address.

5.  Whether principles of equitable tolling apply to the circumstances of this case and, if so, whether Hill can properly invoke such equitable principles given the substantial delay (i.e., one year) in contacting the EEOC to check on the status of his complaint.

18

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 17, 2001

cc:  Leslie H. Johnson, Esq.
     Debra Dyleski-Najjar, Esq.